## LANGLEY, constable, *vs.* WYNN.

1. The rule *nisi* against the constable in this case was sufficiently plain and full to inform him for what he was ruled, and his answer shows that he understood it fully.

2. Where furniture was distrained for rent, it was not the province of the levying constable to judge in regard to the correctness of the initials of the name of a defendant in the distress warrant, and to fail to realize the money thereon because such initials were probably incorrectly stated; especially when the right defendant acknowledged the debt and for awhile the bailiff took his word and gave him time to pay.

3. The constable seems not to have demanded a trial by jury on the motion to attach for contempt, even if entitled to do so on a rule founded on contempt of court.

4. After a rule absolute has been obtained against a constable requiring him to pay money to the movant, what subsequently transpires would hardly relieve him from contempt in not paying it, and the consequent attachment therefor. That the constable made a levy after the rule absolute to which a claim was interposed and sustained, would scarcely relieve him from attachment for failing to pay under the rule absolute.

5. Under the facts of this case, the constable ought, according to law and the duties it imposes on its officers, to pay this debt.

   May 1, 1883.

Constables.   Officers.   Levy and Sale.   Contempt. Attachment.   Judgments.   Before Judge HILLYER.   Fulton Superior Court.   September Term, 1882.

Reported in the decision.

C. W. SMITH; J. T. PENDLETON, for plaintiff in error.

A. R. HIGHTOWER, for defendant.

JACKSON, Chief Justice.

It appears from the record that a rule *nisi* was granted against the plaintiff in error, a constable, for failing to levy, collect the money, and pay over the same, due for rent, on a distress warrant therefor; that the constable failed to answer; that the rule was made absolute, and a rule *nisi* attaching him for contempt was served, and he arrested; and then he made answer that he could find no such person as the defendant, nor any property to levy on, but was informed that he lived in New York.  Thereupon he was discharged from custody, the rule absolute ordering him peremptorily to pay the money due on the distress warrant, was set aside, and he was ordered to answer the rule *nisi* on the next morning, October 13, 1882, and show cause why he should not pay over the money due.  Thereupon he answered, and showed for cause that the party who probably owed the debt was Basil M. Lannau, and not J. B. Lanean, as set out in the warrant; that he levied on some property of Basil M. Laneau, and advertised it for sale on the fourth Tuesday in September, 1882, but did not sell it because he had a stock of goods to sell which took the day ; that Basil Laneau admitted that he owed the debt distrained for, but claimed that the property had been set apart to him as a homestead, and that he had done his whole duty and more than his duty to collect plaintiff's money.  Upon the rule *nisi* and this answer, the court below passed this order:  " The above stated case came on to be heard this day, and after hearing evidence and agreements (?) of counsel, it is considered, ordered and adjudged by the court that the rule in said case be made absolute against said constable, and that he be allowed until 5 o'clock P.M. of the 24th of October inst., to pay over to the plaintiff or his attorney, the principal, interest and costs due on the distress warrant named in the rule *nisi*.  This October 13, 1882."

On the 24th of October he failed to pay the money.

On the 30th a rule, to show cause the next morning why he should not be attached as for contempt, was granted. To that he answered that, since the rule absolute was granted, he had advertised the property of B. M. Laneau for sale on the fourth Tuesday in October, 1882; that before he could sell it that day, a claim was put in by his wife, tried the same day, and the property found not subject, and that he could find no other property. On the same day that this answer was made, he moved to set aside the rule absolute, on the grounds that the rule *nisi* was not distinct enough in stating facts to authorize the rule absolute; that he could not find any property of J. B. Laneau; that the court did not try the rule before a jury; and because, since the rule absolute, the wife's claim to the property was sustained.

Upon this answer to the rule *nisi* for contempt, and this motion to set aside the rule absolute, the court passed the following order:

"I think the rule absolute, on the 13th of October last, is conclusive upon all questions well pleaded in response to the attachment; and it is ordered that, unless the respondent pay into court by, or before, 12 o'clock on Monday next, the several amounts required by said rule absolute, that he be arrested by the sheriff and stand committed until he does pay. This 14th November, 1882."

Upon this judgment and the preliminary orders of the court, error is assigned here.

We think that the court below manifested much patience, and dealt with great indulgence with the plaintiff in error, under the facts which this record discloses.

He failed to make answer at all, though served, to all the preceding stages of the rule to make him return his actings and doings in regard to this distress warrant; and only when in the hands of the sheriff did he answer at all. Then he put his answer to the attachment for contempt on the ground that he could find no such defendant and no property on which to levy. The judge relieved him of the

contempt and his imprisonment therefor, and allowed him on that showing, to answer the rule *nisi*, setting aside the first rule absolute, as well as the first attachment for contempt.   Then he answered that he had found a man of the same surname, but not the same initials, who acknowledged that he owed the debt and had property subject to be distrained for the rent, but could not sell for want of time. Thereupon, the judge heard evidence, and the plaintiff's counsel swore that the distress warrant was a long time in the hands of the constable,—ever since April; that he repeatedly urged him to make the money; that the constable said defendant in the warrant had promised to pay it if he would wait; then that he had levied on property, and defendant's wife had claimed it,—this was long after the warrant was put in constable's hands;—then that the claim was withdrawn, and he had advertised the property for sale on the 4th Tuesday in September; that on that day he did not sell; and then plaintiff's attorney swore that he ruled him.

This testimony was not denied by the constable, who was also sworn, but asserted again his failure to sell, because of the sale of goods first, and then the wife's claim and judgment for her; but furnished no record or written evidence of the claim and judgment thereon, either in his answer to the rule *nisi*, or his sworn testimony before the judge.

We see no error, therefore, in the court below, in denying the motion to set aside the rule absolute, or in passing the order requiring the payment of the amount due on the distress warrant, on pain of being taken into custody by the sheriff and held until it was paid.   There was no legal proof before the judge that the claim was interposed, tried and decided; nor was there any that the plaintiff was not injured by the long negligence of the constable to make the money.   On the contrary, the sensible presumption, arising on the facts, as well as the legal presumption on his failure to levy, and the divers excuses he made

therefor, and his failure to return the distress warrant with his action thereon, is that his conduct did hurt the plaintiff.

The rule *nisi* was sufficiently plain and full to inform him for what he was ruled, and his answer shows that he knew exactly what he was ruled for. The furniture was distrained for rent, and it was no business of his to judge in regard to the initials of the name of a party in a distress warrant, especially when the right man acknowledged that he owed the money for the rent, and for a while he had taken his word for it and given him time. He seems to have demanded no trial by jury, even if entitled to it on a rule founded on contempt of court; and that ground is evidently an afterthought of the motion to set aside. What transpired subsequently to the rule absolute to pay the money, would hardly relieve him from contempt in not paying it, and the legal sequence thereof, attachment for that contempt, even if the claim by the wife had been proved by competent evidence. His neglect and delay seem to have been in the interest, and certainly they worked to the advantage of the defendant and his wife, and thereby hurt the plaintiff, for whom he was acting. In every view of the case, he ought, according to law and the duties it imposes on its officers, to pay this debt.

Judgment affirmed.